## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:24-cr-00151 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| YUE CAO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

A grand jury charged Defendant Yue Cao with various offenses arising out of a purported scheme in which he used his employment at financial institutions allegedly to defraud several bank customers.  Defendant moves to unseal grand jury testimony.  Also, the government moves to dismiss two counts and an account forfeiture charged in the indictment.  For the reasons that follow, the Court **DENIES** Defendant's motion to unseal grand jury testimony.  Further, the Court **GRANTS** the motion of the United States to dismiss and **DISMISSES WITHOUT PREJUDICE** Count 6, Count 14, and the forfeiture of the account associated with Paragraph 20(b) of the indictment.

## FACTUAL AND PROCEDURAL BACKGROUND

From June 2015 to June 2022, Yue Cao worked as a quantitative modeling analyst at a federally insured financial institution in Cleveland, Ohio, identified in the indictment as Bank 1.  (ECF No. 1, PageID #17.)  As an employee who worked

remotely, Mr. Cao lived in Winfield, Illinois.  (*Id.*)  This role gave him access to "substantial customer and client information, including account information."  (*Id.*)

Shortly after his employment at Bank 1 ended, a second financial institution in Westlake, Texas, identified in the indictment as Bank 2, hired Mr. Cao to build models for internal systems designed to predict and track fraud.  (ECF No. 14, PageID #86.)  During the course of his employment, Mr. Cao allegedly defrauded several bank customers by making a series of unauthorized transfers to his personal accounts and to accounts that he opened in customers' names at various financial institutions.  (*Id.*, PageID #86–89.)  Mr. Cao's employers conducted internal investigations, which revealed numerous unauthorized money transfers.  (*Id.*, PageID #88.)  Bank 1 notified law enforcement for further investigation.  (*Id.*, PageID #89.)

### A.   Alleged Offenses

On May 1, 2024, a grand jury indicted Mr. Cao.  (ECF No. 1.)  The United States accuses Mr. Cao of using his positions at Bank 1 and Bank 2 to access personally identifiable information and account information to defraud several customers of Bank 1 who had not enrolled in online banking services, primarily the elderly.  (*Id.*, ¶ 14, PageID #19.)

According to the indictment, after obtaining customers' information, Mr. Cao created email addresses in their names that he used to enroll them in online banking without their knowledge or consent.  (*Id.*, ¶ 14, PageID #19–20.)  Then, Mr. Cao allegedly impersonated the customers to open bank accounts and brokerage accounts at Bank 1 and other financial institutions.  (*Id.*, ¶ 14, PageID #20.)  Next, Mr. Cao

allegedly initiated several unauthorized online transfers to his own accounts, totaling at least $2.1 million.  (*Id.*)

### A.1.   Bank 2's Investigation

In April 2023, the investigation leading to the charges in this case began.  (ECF No. 14, PageID #86.)  Bank 2's internal systems detected an unauthorized transfer of $50,000 from one of the customer's bank accounts at Bank 1 into Mr. Cao's Bank 2 checking account.  (*Id.*)  Bank 2 personnel reviewed Mr. Cao's accounts, and the investigation revealed a series of transactions originating from the customer's account at Bank 1 to Mr. Cao's accounts at Bank 2.  (*Id.*, PageID #87.)  After Mr. Cao completed the unauthorized transfers to his brokerage account, Bank 2 discovered that Mr. Cao allegedly began trading within his account.  (*Id.*)  Then, Mr. Cao allegedly attempted to link three additional customer accounts from Bank 1 to his Bank 2 brokerage account, but Bank 2's new monitoring system denied the linkage because Mr. Cao's social security number did not match those of the customers.  (*Id.*)  Two of these attempts allegedly occurred from the internet protocol address of Mr. Cao's residence.  (*Id.*)  Mr. Cao denied these allegations and claimed ignorance of the unauthorized transfers in two interviews with Bank 2.  (*Id.*)

On April 20, 2023, Bank 2 terminated Mr. Cao's employment.  (*Id.*)  Five days after his termination, Mr. Cao filed a complaint with the FBI Internet Crimes Complaint Center claiming that his accounts and internet router had been hacked. (*Id.*, PageID #87–88.)

### A.2.  Bank 1's Investigation

After identifying several unauthorized transactions, Bank 2 notified Bank 1 of the unauthorized activity involving its customers.  (*Id.*, PageID #88.)  Bank 1 performed an internal investigation into Mr. Cao's activity during the time he was employed and discovered that Mr. Cao had allegedly opened several unauthorized online banking accounts using the personal identifying information of elderly customers and created false email addresses to enroll them in online banking, which gave him control over their accounts.  (*Id.*)  Further, Bank 1 discovered that Mr. Cao allegedly transferred money from the customers' accounts to the unauthorized Bank 1 accounts, as well as unauthorized accounts of other financial institutions that Mr. Cao either opened using the customers' identities or were his own personal accounts.  (*Id.*)  Bank 1 worked with the other financial institutions "to claw back as many of the unauthorized transactions it could."  (*Id.*, PageID #88–89.)  Then, it notified law enforcement regarding its investigation.  (*Id.*, PageID #89.)

### A.3.  The FBI's Investigation

The FBI's investigation revealed additional evidence implicating Mr. Cao, including evidence of attempted and successful account linkages to his personal accounts, multiple credit card payments and unauthorized transfers of money to his personal accounts from a customer's account at Bank 1, and instances of matching AT&T Mobile IP addresses accessing Mr. Cao's personal accounts and an unauthorized account in the name of a Bank 1 customer.  (*Id.*, PageID #89.)

In December 2023, the FBI interviewed Victim 3, who claimed that he did not open the brokerage account at Bank 2 that was in his name, did not authorize three

transactions from his Bank 1 account to the Bank 2 brokerage account, and did not authorize the transfer of $100,000 to Bank 4. (*Id.*, PageID #92.) Victim 3's savings account was also enrolled in online banking in the same manner as two of the other alleged victims—using a virtual private network with the same naming convention for the emails, along with a username that matched the local part of the email addresses. (*Id.*, PageID #91.) At oral argument, the United States alleged that the email address had the same domain as that used with other victims, and was enrolled in online banking on May 4, 2022, the same day as the accounts for two of the other victims. According to the United States, two transfers of $100,000 were made on May 17, 2022 and May 18, 2022 from the Bank 1 account to the unauthorized brokerage account at Bank 2. The United States alleged that a third transfer of $90,738.45 was made in the same manner on May 19, 2022. Finally, the United States alleged that a fourth transfer of $100,000 occurred on July 19, 2022.

### B.    The Indictment

A grand jury returned a 17-count indictment against Mr. Cao, charging: (1) bank fraud (Counts 1 through 11); (2) aggravated identity theft (Counts 12 through 16); and (3) engaging in monetary transactions in criminally derived property (Count 17). (ECF No. 1, ¶¶ 11–19, PageID #18–23.)

### B.1.    Motion to Dismiss Counts 6 and 14

On May 29, 2024, almost a month after the grand jury indicted Defendant, Victim 3 contacted the FBI and claimed that he was a victim of identity theft. (ECF No. 14, PageID #92.) Not long after, on June 10, 2024, Victim 3 called the FBI again, this time claiming that "he opened the certificate of deposit account at Bank 4 and

authorized the $100,000 transfer." (*Id.*, PageID #93.) On July 1, 2024, Bank 4 identified Victim 3's telephone number as the one used to open the account in his name. (*Id.*) The United States claims that it immediately notified Defendant's counsel of these developments and advised "that the counts associated with the July 19, 2022, transactions would be dismissed at the proper juncture." (*Id.*)

On November 15, 2024, the United States moved to dismiss Counts 6 and 14 of the indictment, as well as the forfeiture charge associated with one of the accounts. (ECF No. 15, PageID #100–01.) The United States claimed that it sought to dismiss these two counts because of "the post-indictment wavering statements of a very elderly Bank 1 customer." (*Id.*, PageID #99.) Count 6 relates to the July 19, 2022 transfer of $100,000 from Victim 3's Bank 1 account to an allegedly unauthorized account in Victim 3's name at Bank 4. (ECF No. 1, ¶ 15, PageID #21.) Count 14 charges aggravated identity theft in connection with the transfer in Count 6. (*Id.*, ¶ 17, PageID #22.)

At oral argument, the United States explained that, at the time of the indictment, it had no knowledge that the phone number of Victim 3, who is in his mid-90s, was used to open this account. Defendant argued that the United States knew when it presented the case to the grand jury that the account transfer was made with a phone number with an area code in Northeast New York where the victim lived.

### B.2.   Motion to Produce Grand Jury Transcripts

On September 19, 2024, Defendant moved for production of grand jury transcripts. (ECF No. 11.) As a basis for his motion, Defendant argues that discovery

has made him aware of "a strong likelihood that false or misleading information was provided to the grand jury, either recklessly or intentionally." (*Id.*, PageID #67.) He identifies factual inaccuracies and misleading testimony before the grand jury, as shown in the case of Victim 3, as providing a particularized need for the disclosure. (*Id.*, PageID #69.) Also, he relies on these events as a basis for disclosure "to ensure whether the grand jury was a fair proceeding, to research and prepare pretrial motions to dismiss, and to enable the adequate preparation of a defense." (*Id.*)

More specifically, Defendant argues that Victim 3's recantation "undermine[s] the government's claims regarding IP addresses and indicate[s] that the grand jury was misled," potentially about more than this one victim. (*Id.*, PageID #68.) To bolster this argument, Defendant points to the FBI's investigation, which corroborates Victim 3's recantation and points to Victim 3 and not Mr. Cao as authorizing the transactions at issue before the United States went to the grand jury. (*Id.*, PageID #70–71.) Further, the records available at the time of the grand jury proceedings show discrepancies in the IP addresses between the one accessing Mr. Cao's personal bank account and the one recorded on the bank's system. (*Id.*, PageID #72–73.) Beyond that, Defendant finds the government's investigatory methods opaque, particularly when it comes to ruling out Mr. Cao's claim that his personal accounts were hacked or otherwise compromised in a data breach. (*Id.*, PageID #74.) And given the transfer limits at Bank 1, Defendant expresses concern that the grand jury received false or misleading information relating to Count 3 and Count 4. (*Id.*, PageID #75–76.) Accordingly, Defendant seeks disclosure of the grand

7

jury transcripts to learn whether the issues regarding Victim 3 and the factual discrepancies he identifies on the other counts affected the grand jury's ability to weigh all the evidence as to each count.  (*Id.*, PageID #72.)

## ANALYSIS

First, the Court addresses the motion to dismiss the two counts of the indictment, as well as the forfeiture of an account, relating to Victim 3.  (ECF No. 15.)  Then, the Court turns to Defendant's motion for production of grand jury transcripts.  (ECF No. 11.)

## I.    Motion to Dismiss

Due to Victim 3's "post-indictment wavering statements of a very elderly Bank 1 customer," the United States moves to dismiss Count 6 and Count 14, which charge bank fraud and aggravated identity theft, respectively, as well as the forfeiture charge for the account associated with Paragraph 20(b).  (ECF No. 15, PageID #99.)  Defendant does not oppose this motion.

Pursuant to Rule 48(a), "[t]he government may, with leave of court, dismiss an indictment, information, or complaint."  As discussed above, the United States explained its reasoning for dismissing these counts and the associated forfeiture charge both in briefing and at oral argument.  Therefore, without objection, the Court **GRANTS** the motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Count 6, Count 14, and the forfeiture of the account associated with Paragraph 20(b) of the indictment.

8

## II.    Motion to Produce Grand Jury Transcripts

Rule 6(e) of the Federal Rules of Criminal Procedure implements the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) (citations omitted). As the Supreme Court has recognized, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Safeguarding the confidentiality of grand jury proceedings serves several distinct interests, including encouraging prospective witnesses to come forward; allowing witnesses to testify "fully and frankly" without fear of retribution; mitigating the risk that those indicted would flee or try to influence individual grand jurors; and assuring that persons accused but exonerated will not be held up to "public ridicule." *Id*. at 219.

Grand jury proceedings enjoy a presumption of regularity, *United States v. Azad,* 809 F.2d 291, 295 (6th Cir. 1986), but there are limits to secrecy. Rule 6(e) provides that a court may authorize disclosure of grand jury proceedings "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). Though unartfully drafted, this exception applies where the judicial proceeding for which disclosure is sought differs from the criminal trial that the grand jury's indictment authorizes. *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004); *see also In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (requiring a showing of particularized need "to avoid a possible injustice in another judicial proceeding") (citing *Douglas Oil*, 441 U.S. at 222). Otherwise, this exception would render the second exception (discussed below) superfluous. *Loc Tien*

9

*Nguyen*, 314 F. Supp. 2d at 615–16 (citation omitted); *see also* 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Criminal* § 108 (4th ed. 2021) ("[C]ourts have interpreted their authority to disclose material 'preliminarily to or in connection with a judicial proceeding' narrowly, to prevent the exception from swallowing the secrecy rule.").

As relevant here, a court may authorize disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  A party requesting a grand jury transcript must demonstrate a "particularized need" for the transcript for the secrecy of the proceedings to be lifted in a limited manner.  *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).  A particularized need requires a showing that the defendant's need for the material outweighs the interest in continued secrecy and that the request is tailored only to the material needed.  *See In re Antitrust Grand Jury*, 805 F.2d at 161 (articulating the particularized-need standard under Rule 6(e)(3)(E)(i) (citing *Douglas Oil*, 441 U.S. at 222).  This standard applies even after grand jury proceedings have concluded.  *Douglas Oil*, 441 U.S. at 222.  A court has substantial discretion to determine whether grand jury materials should be released.  *United States v. Short*, 671 F.2d 178, 183–84 (6th Cir. 1982) (citing *Schmidt v. United States*, 115 F.2d 394, 397 (6th Cir. 1940)).  However, "the burden of establishing particularized need is necessarily heavy in order to protect the secrecy of the grand jury."  *In re Grand Jury 89-4-72*, 932 F.2d 481, 489 (6th Cir. 1991).

## II.A.   Particularized Need

Defendant contends that he has a particularized need for disclosure because the United States misrepresented essential facts to the grand jury or, alternatively, misled the grand jury as to Counts 3, 4, and 6.  (ECF No. 11, PageID #67–68 & #77.) He argues that Rule 6(e)(3)(E)(ii) requires disclosure because the government might have made misleading statements to the grand jury warranting dismissal of the indictment.  (*Id*., PageID #77–78.)

### I.A.1. Allegations Regarding Victim 3

"[A]s long as there is 'some competent evidence to sustain the charge issued by the Grand Jury' an indictment will not be dismissed solely on the basis that other evidence presented to the grand jury may have been false or misleading."  *United States v. Labbous*, 82 F.3d 419, at *2 (6th Cir. 1996) (table) (quoting *United States v. Adamo,* 742 F.2d 927, 939 (6th Cir. 1984) (abrogated on other grounds by *Buford v. United States*, 532 U.S. 59, 65 (2001))).  Further, evidence of dismissal of counts against a defendant is not sufficient to warrant the disclosure of grand jury transcripts if "other evidence was presented to the Grand Jury on the remaining count, and [the defendant] has not established any reason to think that evidence would also be tainted." *United States v. Moxley*, No. 1:19-cr-98-15, 2020 WL 4381582, at *1 (N.D. Ohio July 31, 2020).

### I.A.1.i. Reliability of Other Counts

The parties dispute whether the United States knew at the time of the indictment that the phone number related to Victim 3's transfers and Bank 4 account belonged to Victim 3.  (Compare ECF No. 11, PageID #71 with ECF No. 14, PageID

11

#92.)  The United States contends that the similarity of the circumstances regarding Victim 3 to what the investigations had uncovered regarding the other alleged victims in 2022 led them to believe that Victim 3 was another target of Defendant's alleged scheme.  (ECF No. 14, PageID #92.)  At oral argument, Defendant argued that the United States knew at the time of the indictment that Victim 3's account transfer at issue was made using a phone number with an area code in Northeast New York where the victim lived, which Defendant claims had no connection to Mr. Cao.  In response, the prosecutor pointed out that Bank 4 identified Victim 3's phone number as the number initiating the July 19, 2022 transactions only on July 1, 2024—after the grand jury returned the indictment.  (*See id.*, PageID #93.)  Whatever the case, the counts involving Victim 3 have been dismissed, and Defendant presents no reason to believe that any other charge in the indictment suffers from a similar defect or infirmity.  *See Moxley*, 2020 WL 4381582, at *1.

Indeed, the indictment charges separate accounts and financial institutions for the other alleged victims (ECF No. 1, ¶ 15, PageID #21), and multiple institutions launched independent investigations into these claims (ECF No. 14, PageID #86–89).  A request that "offers nothing more than general representations that the transcripts *may contain* relevant and/or exculpatory evidence . . . is insufficient to establish a particularized need for the transcripts."  *United States v. Dimora*, 836 F. Supp. 2d 534, 553 (N.D. Ohio Dec. 28, 2011) (citations omitted).

Nor does dismissal of two counts involving Victim 3 support production of the grand jury transcripts.  In *Moxley*, 2020 WL 4381582, at *1, the defendant argued

that, because the government dismissed two counts against him, the record showed "that the Grand Jury was either misled, misguided or both on those charges, and he question[ed] what sources of evidence remain[ed] for his indictment." The court determined that, because the defendant had "not established any reason" that the other evidence presented to the grand jury on the remaining count was tainted, he lacked a particularized need for the grand jury transcripts. *Id.* So too here. While Defendant points to factual questions, regarding institutional transfer limits, for example, there is no reason to think that the circumstances involving Victim 3 affects other charges in the indictment. And the way to resolve disputes over whether Mr. Cao was himself a victim of identity theft or a data breach in this case involves the parties presenting their respective evidence and arguments to a jury. In the end, dismissal of the counts involving Victim 3 do not provide a basis for a broader disclosure of grand jury materials.

### I.A.1.ii. Manner and Means

Defendant claims that the indictment "utilized blanket statements to establish the manner and means of the alleged scheme" and "does not say what was done to each victim." (ECF No. 11, PageID #71.) Further, Defendant argues that "[t]he blanket statements in the indictment are, on their face, false" because there is "direct evidence that the allegations as to at least one of the victims covered by that blanket statement is not true." (*Id.*, PageID #72.) But the indictment made clear that the alleged scheme was not limited to the means alleged. (ECF No. 1, ¶ 14, PageID #19; ECF No. 14, PageID #94.)

13

Moreover, the indictment includes charges of "what was done to each victim" elsewhere, including a list of unauthorized transfers with dates, amounts, and account numbers by victim. (ECF No. 1, ¶¶ 15–17, PageID #20–22.) Just because the facts charged regarding one victim no longer apply does not make the balance of the allegations false or misleading. *Moxley*, 2020 WL 4381582, at *1. "[A]n indictment is sufficient if it 'fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Howard*, 947 F.3d 936, 943 (6th Cir. 2020) (citing *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008)).

*     *     *

For these reasons, the Court finds that Defendant has not established a particularized need for grand jury transcripts or materials based on the allegations regarding Victim 3. Even without those charges, and accounting for the facts and circumstances regarding Victim 3's recantation leading to the motion to dismiss those charges, the indictment shows probable cause independent of those allegations.

### I.A.2. IP Addresses

Defendant also bases his motion on what he calls the investigation's "flawed and misleading" evidence of IP addresses linking the unauthorized transactions to him. (ECF No. 11, PageID #72.) Defendant cites two examples: (1) the IP address listed in an affidavit from a special agent with the FBI as accessing Mr. Cao's personal Bank of America account on December 16, 2022 does not match the one recorded in the bank's system; and (2) the use of virtual private networks limited the FBI's ability

14

to trace user IP addresses, but the available information links to a person other than Mr. Cao. (*Id.*, PageID #72–73.)

### I.A.2.i. December 16, 2022 Incident

In her affidavit in support of a search warrant for Mr. Cao's email, an FBI agent attested that the same IP address accessed Defendant's Google email account, Defendant's personal Bank of America account, and Victim 2's account at Bank 1 on December 16, 2022. (ECF No. 14, PageID #94.) Defendant argues that the IP address did not access his Bank of America account, but his Robinhood account. (*Id.*, PageID #73; ECF No. 16, PageID #107–08.) In briefing and at oral argument, the United States concedes this error. (ECF No. 14, PageID #94.)

Whichever account was accessed—whether Mr. Cao's Robinhood or Bank of America account—does not change the fact that the IP address accessed one of his accounts. The United States alleges that this same IP address accessed an account of one of the victims in this case. (*Id.*) Defendant does not dispute this fact. Accordingly, this factual discrepancy does not amount to a material misrepresentation. Nor does the record present any reason to think it made any difference in the ability of the grand jury to find probable cause on the totality of evidence provided.

### I.A.2.ii. VPN Use

Defendant points out that the email search warrant affidavit recited that the FBI had limited ability to trace the user and IP addresses of key accounts in the investigation because of the use of virtual private networks. Still, it identified the IP address used to access one of Mr. Cao's personal accounts and Victim 2's account with

Bank 5 on June 24, 2022.  But that IP address was located in St. Louis, Missouri.
(ECF No. 11, PageID #73.)  In response, the United States concedes that this
statement "was also a typographical error."  (ECF No. 14, PageID #95.)  Instead, the
IP address was associated with a mobile IP address assigned to the network provider
for Mr. Cao's cell phone carrier.  (*Id.*)

Again, this error does not represent a material misrepresentation because the
information still traces back to Mr. Cao, just by another avenue.  In this respect, it
does not affect the grand jury's finding of probable cause based on the totality of
evidence.  Indeed, the indictment does not specifically mention the events of June 24,
2022.  Further, the counts regarding Victim 2 list dates in May 2022, before the
alleged incident disputed here occurred.  (ECF No. 1, ¶¶ 15–17, PageID #20–22.)

\*   \*   \*

For these reasons, the Court determines that Defendant has not established a
particularized need for grand jury transcripts based on the errors regarding certain
IP addresses.

### I.A.3. Bank 1's Internal Policies

Defendant argues that the United States misled the grand jury because the
evidence contradicts Bank 1's internal policy on transfers.  (ECF No. 11, PageID
#74–76.)  Defendant claims that Bank 1 "imposes a daily transfer limit of $100,000
on companies for Automated Clearing House (ACH) payments to external accounts,"
with more restrictive limits for personal accounts, and mandates dual authorization
for large ACH transfers that "exceed the Electronic Payment Authorization (EPA)
Maximum Dollar Limit."  (*Id.*, PageID #74–75.)  Defendant maintains that Bank 1's

16

policies "cast further doubt" on the charges in Counts 3, 4, and 5 of the indictment, which allege unauthorized transfers of $250,000, $142,008.50, and $67,807.43, respectively. (*Id*. PageID #75.)

Defendant argues that the United States "knew or should have known" that these amounts "exceed the established transfer thresholds and would therefore require secondary authorization." (*Id*.) To that end, Defendant contends that (1) "the government must provide information regarding the EPA limits applicable to each victim's account with Bank 1 at the time of the alleged transactions outlined in all counts against him" and (2) he is entitled to the grand jury transcripts "to determine whether the government also misled them as to how transfers work, what they entail, or if it is even possible for someone to do what Mr. Cao is alleged to have done." (*Id.*, PageID #75–76.)

In response, the United States argues that various Bank 1 policies did not apply to the unauthorized transfers, including those related to mobile check deposits, enhanced online banking, and electronic payment dual authorization. (ECF No. 14, PageID #96–97.) But the Court need not delve into disputes of fact on the applicable services and policies to determine that Defendant is not entitled to grand jury transcripts on this basis. "[M]ere speculation or suggestion . . . is not sufficient to show a particularized need for disclosure." *Noffsinger v. Landers*, 196 F. Supp. 3d 746, 755 (N.D. Ohio 2016) (quoting *Miller v. Meyer*, No. 2:14-cv-00101, 2015 WL 770333, at *3 (S.D. Ohio Feb. 23, 2015)); *see also Walker v. Stanforth*, No. 2:17-cv-1037, 2019 WL 2240243, at *6 (S.D. Ohio May 24, 2019) (determining that there was

no established particularized need where the party "offered only speculation that the grand jury materials might contain information" regarding a certain issue). Defendant has not established a particularized need for the grand jury transcripts based on Bank 1's policies.

### II.B.  Alternative Explanations

Based on "some evidence to show that his Bank 2 account was compromised prior to the alleged thefts in the indictment," Defendant maintains that his personal accounts were hacked, suggesting that some other person committed the fraud charged in the indictment.  (ECF No. 11, PageID #74.)  This defense relies on the following statement produced in discovery:  "Can you check into Cust ID 0177237857 for any attempst [*sic*] of hacking/account takeover?  It's an employee account . . . Logins look inconsistent.  It could be malware.  He had fraud in a previous account, not sure how that ties together yet."  (*Id.*)  Without more, it is unclear how this information establishes that Mr. Cao's account was compromised or supports production of the grand jury transcripts.

Further, Defendant relies on an article describing a "significant data breach in early July 2022" at Bank 1 that he claims "coincided with the unauthorized transfers central to the current indictment."  (*Id.*)  If true, this fact has questionable relevance. After all, the unauthorized transfers and aggravated identity theft charged in Counts 3, 4, 5, 9, 11, and 16 occurred *before* July 2022.  (ECF No. 1, ¶¶ 15–17, PageID #20–22.)  In any event, the proper way to resolve a dispute of fact regarding Mr. Cao's responsibility for the conduct alleged is through the presentation of evidence to the

18

jury.  A motion seeking disclosure of grand jury material does not substitute for a trial.

### II.C.  *Brady* Obligations

Defendant argues that he has a particularized need for the grand jury transcripts based on the disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  (ECF No. 11, PageID #78–79.)  Without the transcripts, "the defense can neither effectively prepare and file a motion to dismiss any counts nor adequately prepare for trial."  (*Id.*, PageID #79.)  The two cases that Defendant cites in support of this contention have nothing to do with the disclosure of grand jury transcripts.  *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007), addressed the failure to conduct an evidentiary hearing to explore the nature of materials underlying the defendants' *Brady* claims, none of which concerned grand jury testimony.  And *United States v. Budziak*, 697 F.3d 1105, 1112–13 (9th Cir. 2012), did not address *Brady*, let alone grand jury testimony.  Defendant cites it for the unremarkable principle that district courts "should not merely defer to government assertions that discovery would be fruitless."  *Id.*

No one here disputes that the United States has duties pursuant to *Brady*.  But "*Brady* was never intended to create pretrial remedies."  *Short*, 671 F.2d at 187 (quoting *United States v. Moore*, 439 F.2d 1107,1108 (6th Cir. 1971)); *see also United States v. Turks*, No. 3:17-CR-444, 2019 WL 3858632, at *2 n.4 (N.D. Ohio Aug. 16, 2019) (noting that "*Brady* creates a post-trial remedy, not a pretrial right to pretrial discovery") (citation omitted).

Moreover, the United States represented—and Defendant does not dispute—that "it timely notified Defendant's counsel of Victim 3's wavering statements and provided communications from Bank 4 related to the phone number that opened the account." (ECF No. 14, PageID #97.) And, pursuant to the Due Process Protections Act, codified in Rule 5(f), the Court already reminded the prosecution of its *Brady* obligations. (*See* ECF No. 8; *see also* ECF No. 9, PageID #59–61.)

To the extent that Defendant claims that the United States should have presented exculpatory evidence to the grand jury, it has long been established that the United States is not required to present every fact regarding a case to a grand jury, including any exculpatory evidence. "To the contrary, requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body." *United States v. Williams*, 504 U.S. 36, 51 (1992); *see also United States v. Pearl*, No. 5:17-CR-240, 2018 WL 490555, at *2 (N.D. Ohio Jan. 18, 2018) (noting that "the government has no duty to provide potentially exculpatory evidence to the grand jury") (quoting *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014)). Therefore, Defendant cannot establish a particularized need based on *Brady* either.

## CONCLUSION

For all these reasons, the Court **DENIES** Defendant's motion to unseal grand jury testimony. (ECF No. 11.) Further, the Court **GRANTS** the United States's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Count 6, Count 14,

and the forfeiture charge for the account associated with Paragraph 20(b) of the indictment.  (ECF No. 15.)

**SO ORDERED.**

Dated:  April 24, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio